Application of Charles ESTES for Writ of Habeas Corpus.

No. A-12749.

Court of Criminal Appeals of Oklahoma.

May 13, 1959.

Hart & Burger, Pauls Valley, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., G. Dixie Colbert, County Atty., Murray County, Sulphur, for respondent.

CORN, Special Judge.

This is an original petition for a writ of habeas corpus by Charles Estes alleging that he is restrained of his liberty and is unlawfully imprisoned and restrained at the Oklahoma State Reformatory at Granite, Oklahoma by the warden thereof. The petition alleges:

"The cause of said restraint, according to the best knowledge and belief of your petitioner, is by a committment issued by District Judge William J. Monroe, but your petitioner alleges that said restraint is illegal and unauthorized, in that the information filed against this petitioner alleges that defendant did steal from Tom Freeman, two calves; that Tom Freeman was the rightful and legal owner of said calves and that defendant, Charles Estes took the said calves with the intent to deprive Tom Freeman of his rightful ownership thereof; said information is not subscribed to by any one purporting to be the County Attorney of Murray County, State of Oklahoma, but is void of any signature of any person, who purports to act by and through the authority of the State of Oklahoma. The Criminal Court file No. 1715, in the office of the Court Clerk of Murray County, State of Oklahoma, contains a complaint against this petitioner, which has been subscribed to by Bonn Mann and alleges essentially the same things alleged in the information. This complaint is not subscribed to by Tom Freeman, nor any one else who purports to be the agent of Tom Freeman, or in a position to allege the facts constituting a crime. The Criminal Court file further discloses a transcript of the records of Justice of Peace, Frank Turner."

"The transcript reveals on the 17th day of December, 1957, the defendant, Charles Estes, appeared by and through Millard Lowrance; that the warrant of arrest was not issued until the 23rd day of December, 1957; that Millard Lowrance was not on said date authorized, nor empowered by any authority, to serve as the County Attorney, or his duly appointed assistant in any capacity. The transcript of Justice of Peace, Frank Turner, further states that the defendant, Charles Estes, waived a preliminary hearing, when in truth and in fact, Charles Estes, did not appear before Justice of Peace, Frank Turner, did not waive a preliminary hearing and did not authorize any person, acting in his behalf, to waive a preliminary hearing; that no preliminary hearing was ever had; that Tom Freeman, who purportedly is the complainant, as shown by the complaint and information, did not appear at the preliminary hearing, has never to this date signed a complaint against this defendant; is not endorsed as a witness on the information filed in the District Court and in truth and in fact, has never complained of this petitioner and does not wish to at this date."

"That petitioner, who is uneducated and inexperienced in legal matters, who was a minor of the age of nineteen years at the time he was purportedly charged with said crime, was told that if he would sign a confession, to said crime, that nothing would be done about it; that he would not be required to make bond; that the whole matter would be forgotten. At none of the

hearings which transpired during December, 1957 and January, 1958 was the petitioner advised of his constitutional rights and guarantees; that he was deprived of his liberties without due process of law; that Millard Lowrance, the person who purportedly was prosecuting him in the Justice of Peace Court, purportedly, at a later date, was acting as his attorney. Mr. Lowrance, with others purportedly against this petitioner in this case, informed him that two calves had been stolen on December 17, 1957; that these calves had been transported to a livestock sale in a pickup owned by this defendant, or very much like this defendant's and because this knowledge was in the hands of certain authorities, this petitioner, Charles Estes, could be convicted of Larceny of Cattle, whether he had anything to do with it or not; that this defendant verily believed that unless he did what the ex-prosecutor, then acting attorney, told him to do, he would be convicted of a crime which he had not committed and that he plead guilty to this crime out of fear, coercion and duress and because of his lack of legal education, did not understand that in pleading guilty to the charge, that he could be incarcerated in the jail or penitentiary as a result of his plea."

"The said purported plea of guilty was made, as a result of the violation of petitioner's constitutional rights and the laws of the State of Oklahoma as made and provided; that your petitioner, immediately after the purported plea of guilty, was sentenced to three years in the State Penitentiary, said sentence being suspended; that thereafter, the Court ordered verbally that said sentence be revoked."

Upon the filing of the petition seeking the writ, the case was set for hearing. The petitioner was present at the hearing and testified in substance that after he was arrested he was not informed by the deputy sheriff that arrested him, the county attorney or any one else as to his rights, but was led to believe by the deputy sheriff and the county attorney that they had information that the stolen calves were hauled in his pickup truck to the place where they were sold, and the best thing for him to do was to confess and they would not require him to give bond, but he could go home. That was the only reason for writing and signing the confession, and that he was not guilty of stealing the calves. The father of the boy testified that the deputy sheriff suggested to him that he get attorney Lowrance, who was a former county attorney of that county, to represent his son.

The following affidavit will give a better understanding of the facts in this case.

"G. Dixie Colbert, being first duly sworn, alleges and says:

"1. That I am an Attorney at Law with office in Sulphur, Oklahoma.

"2. That I was the duly elected and qualified County Attorney of Murray County during the period of December 16, 1957 through January 14, 1958; that I personally prosecuted Charles Estes for the crime of larceny of cattle, Murray County District Court, case No. 1715.

"3. That on the 16th day of December, 1957, Mr. Bon Mann, former Deputy Sheriff of Murray County, came into my office with one Charles Estes and stated that Charles Estes wished to make a voluntary, written statement. Whereupon, I informed him of his rights and notified him that the statement might be used as evidence against him, then asked if he still wanted to make a written statement. Charles Estes then said that he still wished to make a written statement and immediately sat down in the presence of Mr. Bon Mann and myself, and wrote a confession, admitting the theft of two calves from a Mr. Tom Freeman. Said statement is attached hereto, marked Exhibit 'A' and incorporated in this affidavit by reference. No promises on non-prosecution or a suspended sentence were made by me to Charles Estes and none were made by Bon Mann, in my presence.

"4. A complaint charging Charles Estes and Sherfield Hale with 'Lar-

ceny of Cattle' was filed in the Justice of Peace Court of Frank Turner.

"5. Sometime later, Millard F. Lowrance, Attorney at Law, Sulphur, Oklahoma, contacted me in this matter for the purpose of procuring Charles Estes a suspended sentence, I advised Mr. Lowrance that the prior bad reputation of Charles Estes would preclude me from recommending a suspended sentence, and, furthermore, that I did not feel that the District Judge, W. J. Monroe, would consider a suspended sentence after being apprised of the defendant's prior, unsavory reputation.

"6. Mr. Lowrance approached me on this same subject several times during the next few days, and I finally agreed that I would not resist a suspended sentence.

"7. Thereafter, Charles Estes, with his attorney, Millard F. Lowrance, and myself, appeared before Justice of the Peace, Frank Turner, waived Preliminary Hearing and requested that said case be bound over to District Court.

"8. Charles Estes was arraigned in District Court on this charge, pleaded guilty and received a three year sentence. Said sentence was suspended by the court during the good behavior of Charles Estes."

It is not necessary to set forth herein what the record in this case shows for the reason the same is fully reflected by the above affidavit.

After a thorough examination of the record we find that the petitioner is in error as to some of the allegations in the petition, relied upon by him, for the relief sought, to wit:

" * * * said information is not subscribed to by anyone purporting to be the County Attorney of Murray County, State of Oklahoma, but is void of any signature of any person, who purports to act by and through the authority of the State of Oklahoma."

A copy of the information shows, in part:

"In the Name and by the Authority of the State of Oklahoma Now comes G. Dixie Colbert, the duly qualified and acting County Attorney, in and for Murray County, State of Oklahoma, and gives the District Court of Murray County and State of Oklahoma, * * *" and signed, "G. Dixie Colbert, County Attorney."

Much is also said in the petition about the complaint being signed by the Deputy Sheriff, Bon Mann, instead of Tom Freeman, the owner of the stolen calves. And also about the record of Turner, Justice of the Peace, showing Lowrance was acting as county attorney instead of representing the petitioner. The record does show, but through a mistake, his name was shown as prosecuting the petitioner instead of defending him. When in fact he was employed to get the petitioner as suspended sentence, and took charge of the case and did get the sentence suspended. Another allegation in the petition that we will briefly discuss is that petitioner states that the District Judge, in an attempt to intimidate his counsel, so that the true facts and circumstances of said sentence could not be brought out, and a record made thereof, made threatening remarks toward his counsel. It would serve no useful purpose to set forth herein the alleged remarks or to engage in lengthy discussion of this unsavory matter.

Suffice it to say that every person charged with a felony has a right to be represented by counsel at each and every step taken in a criminal proceeding, and the counsel has a right to use all the fair means available in representing his client, and in doing so should not be criticized, but upheld by the court. The remarks of the trail court were unbecoming of the judiciary and better judicial temperament would have been portrayed had they been unsaid. In order to maintain the high degree of respect required by the courts, trial judges should refrain from indulging in personalities from the bench. The cloak of dig-

nity should never be discarded for the purpose of character assassination of officers of the court who appear before trial judges representing a client charged with a felony. However, in the instant case, the untimely remarks of the trial judge failed to alter the facts as presented by the record before us.

We have examined the record in this case with care, and are unable to agree with the petitioner that he was not sufficiently informed of his constitutional and statutory rights. The record shows ample evidence for the basis of the trial court's order revoking the suspended sentence.

■■ The rule we are compelled to follow in this case is where judgment is regular on its face, proof necessary to vacate judgment and sentence by habeas corpus for alleged denial of fundamental constitutional rights must be clear, convincing and without doubt. The petitioner has wholly failed to make such proof. See In re Gaskill, Okl.Cr., 335 P.2d 1088.

Writ denied.

NIX and BRETT, JJ., concur.